EMT

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
#### EASTERN DIVISION

RECEIVED

DEC 20 2011
DEC 20 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

_Jamal Williams_

_____

(Name of the plaintiff or plaintiffs)

v.

_Chicago Lighthouse_

_____

(Name of the defendant or defendants)

CIVIL ACTION

**11-cv-08993**
**Judge George W. Lindberg**
**Magistrate Judge Jeffrey T. Gilbert**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  This is an action for employment discrimination.

2.  The plaintiff is _JAMAL WILLIAMS_ of the county of _COOK_ in the state of _ILLINOIS_ .

3.  The defendant is _CHICAGO LIGHTHOUSE_ , whose street address is _1850 W. ROOSEVELT ROAD_ ,

    (city) _CHICAGO_ (county) _COOK_ (state) _IL_ (ZIP) _60608_

    (Defendant's telephone number) _(312) – 666-1331_

II  The plaintiff sought employment or was employed by the defendant at (street address) _1850 W ROOSEVELT ROAD_ (city) _CHICAGO_

    (county) _COOK_ (state) _IL_ (ZIP code) _60608_

5.  The plaintiff [*check one box*]

    (a) ☐ was denied employment by the defendant.

    (b) ☐ was hired and is still employed by the defendant.

    (c) ☒ was employed but is no longer employed by the defendant.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _12_ , (day) _16_ , (year) _09_ .

7.1  *(Choose paragraph 7.1 or 7.2, do NOT complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff  *[check one box]*

    ☐ has not ☒ has filed a charge or charges against the defendant asserting the acts of

    discrimination indicated in this complaint with any of the following government agencies:

    (i)    ☒ the United States Equal Employment Opportunity Commission, on or about
(month) ___8___ (day) __3__ (year) _2010_ .

    (ii)    ☐ the Illinois Department of Human Rights, on or about
(month) _____ (day) _____ (year) _____ .

(b) If charges *were* filed with an agency indicated above, a copy of the charge is ttached.  ☒ YES. ☐ NO,

**but plaintiff will file a copy of the charge within 14 days**.
It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human
Rights to cross-file with the other agency all charges received.  The plaintiff has no reason to believe that this
policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and
(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting
the acts of discrimination indicated in this court complaint.

    ☐    Yes (month) _____ (day) _____ (year) _____

    ☐    No, did not file Complaint of Employment Discrimination

2.    The plaintiff received a Final Agency Decision on (month) _____
(day) _____ (year) _____ .

c.    Attached is a copy of the

    a.  Complaint of Employment Discrimination,

    ☐ YES    ☐ NO, but a copy will be filed within 14 days.

    (ii)    Final Agency Decision

    ☐ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b)☒ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) September (day) 28 (year) 2011 a copy of which *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a)☐    Age (Age Discrimination Employment Act).

(b)☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c)☒    Disability (Americans with Disabilities Act or Rehabilitation Act)

(d)☐    National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e)☐    Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f)☐    Religion (Title VII of the Civil Rights Act of 1964)

(g)☐    Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12.    The defendant [*check only those that apply*]

(a)☐    failed to hire the plaintiff.

(b)☒    terminated the plaintiff's employment.

(c)☐    failed to promote the plaintiff.

(d)☐    failed to reasonably accommodate the plaintiff's religion.

(e)☒    failed to reasonably accommodate the plaintiff's disabilities.

(f)☒    failed to stop harassment;

(g)☐    retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h)☒    other (specify): Harrassed/Intimidated after returning from Sick-leave - Seizure

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Dr's note Bus called ambulance - when I returned to work, was told that I come too early, In piano room too much, harassing co-workers. Was promoted a week before seizure to Rush University Hospital Gift Shop

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ YES ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☒ Direct the defendant to re-employ the plaintiff.

(c) ☒ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☒ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐ Direct the defendant to (specify): Pay punative damages, back pay, front pay, attorney's/court fees $300,000 in punative damages

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☐ Grant such other relief as the Court may find appropriate.

_____
Plaintiff's signature

Williams, Jamal
_____
Plaintiff's name

Plaintiff's street address  13943 S. WABASH AVE

☐ GN

City  Riverdale  State  IL  ZIP  60827

Plaintiff's telephone number  708.849.8740

Date:  12.19.11

November 28, 2011

I feel that I was wrongfully treated and discriminated against by Jeanette Bonzani, Director of Human Resources at Chicago Lighthouse, Sheila A. Perkins, Vice President of Employment Services at the Chicago Lighthouse and Miguel Zapata, Supervisor of the Call Center where I was employed. I believe that I was discriminated against because I suffer from epilepsy, and because I had a seizure while going home from work at the General Services Administration building, where I was sent to fill in for a vacationing Receptionist, Dorothy Bryant. Ms. Bonzani was the only person who knew about my seizure, and it is my belief that she instructed her employees, Ms. Perkins and Mr. Zapata to intimidate and harass me when I returned back to work from my sick-leave.

A week before being sent to the General Services Administration building at 536 South Clark Street in Chicago, I had an interview with Jeanette Bonzani and another individual regarding a new job opportunity at the Gift Shop as a cashier at the Rush University Medical Center. It was to be a full-time position. I had the interview a few days before being sent to the General Services Administration building.

IAt this time, I was excited about the new job at the Gift Shop at the Rush University Medical Center in Chicago, IL. One of the requirements of the job at the hospital Gift Shop was to stand for long periods of time and to be able to lift fifty pounds, which was no problem. I was to start the job at the hospital on January 10, 2010 as a Cashier at the Gift Shop. I was also excited because I had the opportunity to host my own radio show on December 21, 2009 at the on-site KRIS Radio station at the Chicago Lighthouse.

On November 16, 2009, I was sent to the General Services Administration building. I was there from 7 A.M. until 4 P.M. From November 16, 2009 until November 18, 2009, in which I was never paid for my three days of service by the Chicago Lighthouse.

On November 18, 2009, while on the way home on the PACE/SCR Transit, I had a seizure and was rushed to Jackson Park Memorial Hospital. The accident occurred on 8400 South Michigan Ave on Chicago, IL The Driver if the SCR/PACE bus was Charles Miller # 31365. If you need further information, the PACE/SCR Manager can be reached at 773-768-7000.

On December 15, 2009 I returned back to work at the Chicago Lighthouse, and gave Jeanette Bonzani my Doctor's note excusing me for the absences. I sensed hostility immediately. When I gave Ms. Bonzani my Doctor's note, she was mumbling saying that she didn't know what the doctor meant in the letter that I gave to her. I then granted her permission to call my doctor, and she called Dr. Ashok N.Shah, OB/GYN on the loudspeaker, where the doctor excused my absences during my convalescence.

When I put my hand out to shake Ms. Bonzani's hand, as she turned, she mumbled something that I couldn't understand. That is when she stated in a very quick and high-pitched tone that my doctor told her that I couldn't lift 50 pounds (which is what was necessary if I were to work in the store at the hospital). Lifting heavy objects do not trigger seizures, nor does it have anythig to do with Epilipsy. I know that Dr. Shah from Jackson Park Memorial Hospital (773-947-7500) didn't tell her any such thing, because I was never told that by any doctor, and I was also in the room when she spoke with my doctor on the conference call.

I went to work after the meeting with Ms. Bonzani, and I sensed that it was different in the call center. They had a radio blasting that was next to my desk, and it was difficult to hear any of the calls from the patients who were scheduling appointments to see their eye doctors. When I brought that to the attention of Miguel Zapata, the Supervisor, his response was "You're going to hear it anyway."

Later on that day, I was talking with Edwina Monzano, Program Director of KRIS Radio, who was sitting behind me. I was discussing my up-coming radio show that I was to do at the Lighthouse. Mr. Zapata pulled me out of the room - as if we were in a classroom to tell me that we don't get paid to talk about KRIS Radio. My phone lines were not busy or anything of that matter. I knew that I was being singled out, and I knew that Jeanette Bonzani had put him up to this, seeing that she was the only person who knew about my seizure. I told Mr. Zapata "okay" and just let it go. On the way home, I said to myself that it wasn't right and they can't tell me that I can't talk in a work setting - especially when the other workers talk all of the time, and especially when the phone lines are not busy. Other people are able to surf the internet, talk on personal calls, and talk amongst themselves. I definitely felt that I was being discriminated against because of my seizure, which is a disability.

On December 16, 2009 at 11:30 A.M., I came to work to talk to the Supervisor, Miguel Zapata, regarding his statement that we 'didn't get paid to talk about KRIS Radio' on the day before. At first he started to raise his voice feeling that he was justified in saying the remark on the day before. Immediately, he instructed me to go with him to talk to Sheila A. Perkins, Director of Employment Services, at the time of the incident. She has since been promoted to Vice President of Employment Services. I was not required to go see Sheila Perkins because I wasn't on the clock. I knew it was a set-up all along. While in the room with Sheila A. Perkins, Miguel stated that I was coming to work 'too early', even though with him being nearly blind, he had no idea when I would come to work. That has never been a problem in the past, nor should it ever be a problem. My hours were from 1 P.M. to 5 P.M. Monday through Friday. Every day since the first day of employment, I would show up at work at 11:30 A.M. and have lunch or do whatever it is that I do on my own time.

There is a sign-in sheet that I'm sure that they still have on file to prove what time I would show up daily. I would sign in every day at the same time, which was at 11:30 A.M. I have never been late, nor did I ever miss a day while working at the Chicago Lighthouse.

After having lunch, I would take a walk outside or go down to the Music Department that they have at the Chicago Lighthouse to watch the musicians rehearse in the piano room that they have on-site. One day, I was invited into the piano room to play and sing with the individuals. It was the only time that I had been in the piano room. When I told Sheila Perkins and Miguel Zapata that is what I usually do after having my lunch before work, Miguel's response was that the Manager of the music department told him that I'm in the piano room too much. That was a lie because the Manager of the Music Department had no idea that I worked at the Chicago Lighthouse, nor did they know which department that I worked in. I believe that I am free to do what I want to do on my own time and during the breaks that I have while I am working. When I told Sheila Perkins that it wasn't true, and that the Manager of the Music Department told me that I can come in there any time, her loud and obnoxious response was "HIS NAME IS 'SO AND SO'!"

Sheila Perkins screamed at the top of her lungs to ask "WHY DO YOU COME IN SO EARLY?" I said in a soft voice that I come early because I live in the south suburbs and have to catch a train and a bus to get to work on time. Her response with a look of disgust was "Oh". I kept asking Ms. Perkins not to yell at me, and it continued. Her response to my request was that "THERE IS GOING TO BE SOME YELLING!"

Sheila Perkins even lied and said that some workers said that I was coming in and out of their offices and giving some of the workers problems. I definitely didn't appreciate that, and I had nowhere to turn since I know that Ms. Bonzani set the whole thing up. I asked that when I return to work, may I have my own quiet music at my desk, because I needed it to be quiet so that I can control my seizures, and that I didn't want to talk to anyone. Again, Ms. Perkins started to yell and said to me "YOU WORK IN A CALL CENTER AND DON'T TALK TO ANYBODY?" She also stated that I was "GOING TO SOCIALIZE WITH MY CO-WORKERS!" I did not know that socializing was a requirement for this particular position. For one, I was confused; just a day earlier I 'didn't get paid to talk about KRIS Radio'.

Again, I asked her not to yell and my patience had run very thin. When she picked up the phone, I set my badge on the desk because I felt that I was about to have a seizure. I also suffer from hypertension. I was about to go to Human Resources to discuss this matter with Ms. Bonzani but I realized that she was the one who orchestrated the whole thing.

I didn't know if Sheila Perkins was calling the police or trying to call Jeanette Bonzani after seeing that I was fed up after being yelled at and disrespected all this time. As I was going out, Sheila Perkins yelled again telling me "YOU ARE GOING TO WAIT!" I don't know what reaction she was looking for, but I walked out, but did not quit the job. Ms. Perkins yelled at me and told me to get off of the premises. I was not going to sit in a hostile environment like that, especially when I wasn't required to do so.

I think that the Lighthouse is run like a daycare center because some people feel that just because someone has a disability, that they are also ignorant. I received a registered letter a few days later from Jeanette Bonzani regarding 'my' behavior'. Jeanette Bonzani was nowhere near the room when Sheila Perkins was being disrespectful and hostile. I know that Sheila Perkins and Miguel Zapata were only doing what Ms. Bonzani instructed them to do, which is not right. When I asked to speak to Ms. Bonzani's supervisor, who is Dr. Janet Szylyk, Ms. Bonzani's response was "She knows what went on anyway". I left several messages on Dr. Janet Szylyk's voice mail. There was no return. Her number is 312 666 1331 *3644. I think that was totally inappropriate and unprofessional on all of their parts.

It hurt when I found out that Sheila A. Perkins was promoted to the position of Vice President of Employment Services at the Chicago Lighthouse months after I dealt with the harassment, intimidation and discrimination by her and by the company.

I have tried to work through my Department of Rehabilitation counselor, Delores Thomas 708-857-2377, but to no avail. She kept suggesting that I try the Lighthouse, but since Ms. Perkins told me to get off of the premises, I have not been able to use any of their services, and I don't think that's right at all. I have not been back to the Chicago Lighthouse since December 16, 2009.

I am filing a Civil lawsuit against the Chicago Lighthouse for infliction of emotional distress, back pay, front pay, compensatory damages, punitive/liquidated damages, payment of fees and Anti-discrimination damages. The staff at the Chicago Lighthouse definitely violated the Americans with Disabilities Act. I was not accommodated after returning to work after having a seizure, and the job that I was hired to do at the hospital was taken away from me - all because of having a seizure.

I have not been able to take care of myself or my daughter. I have medical bills, utility bills and credit card bills that I am not able to pay. My credit is ruined because of this. All of this could have been prevented had the Ms. Bonzani offered me a full-time job in the Call Center or another area of the Chicago Lighthouse with more pay and benefits, if she was concerned about my seizures while working at Rush University Medical Center.


Jamal Williams
Jamalwilliamss@aol.com

EEOC Form 161 (11/09)        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  Jamal Williams<br>13943 S. Wabash, #GN<br>Riverdale, IL 60827 | From:  Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

**CERTIFIED MAIL 7011 1150 0001 5279 8134**

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2010-05271 | Anna Bojda,<br>Investigator | (312) 869-8130 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

John P. Rowe,                                    9/28/11
**John P. Rowe,**
**District Director**                              (Date Mailed)

Enclosures(s)

cc:      CHICAGO LIGHTHOUSE FOR THE BLIND

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2010-05271 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Jamal Williams** | **(708) 849-8740** | **06-01-1971** |

| Street Address | City, State and ZIP Code |
|---|---|
| **13943 S. Wabash, #GN, Riverdale, IL 60827** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CHICAGO LIGHTHOUSE FOR THE BLIND** | **101 - 200** | **(312) 666-1331** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1850 W Roosevelt Rd, Chicago, IL 60608** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest      Latest |

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE: Latest **12-16-2009**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the Respondent on October 5, 2009. I was employed as a Customer Service Representative. Respondent was aware of my disability. During my employment, I was harassed. On December 16, 2009, I was discharged.

I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

RECEIVED EEOC
AUG 0 6 2010
CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 8-3-10    X *[signature]*    Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Jackson Park Hospital

INP

...ient ID Number...
...ysician: _____

WILLIAMS, JAMA...
SX: M  DOB: 06/01/1971  AGE: 38Y
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
V#: 781451  DT:12/08/2009 18:14
M#: 208653  Plan# 0500
KANDALA, RAJIV.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES
OMB Approval No. 0938-0692

# AN IMPORTANT MESSAGE FROM MEDICARE ABOUT YOUR RIGHTS

## A HOSPITAL INPATIENT YOU HAVE THE RIGHT TO:

...eceive Medicare covered services. This includes medically necessary hospital services and services you
...ay need after you are discharged, if ordered by your doctor. You have a right to know about these services,
...ho will pay for them, and where you can get them.

...e involved in any decisions about your hospital stay, and know who will pay for it.

...eport any concerns you have about the quality of care you receive to the Quality Improvement
...rganization (QIO) listed here:

...me of QIO

...WA FOUNDATION FOR MEDICAL CARE / ILLINOIS FOUNDATION FOR QUALITY HEALTH CARE

...lephone Number of QIO

...800) 383-2856

## ...UR MEDICARE DISCHARGE RIGHTS

...nning For Your Discharge: During your hospital stay, the hospital staff will be working with you to
...pare for your safe discharge and arrange for services you may need after you leave the hospital. When you
...longer need inpatient hospital care, your doctor or the hospital staff will inform you of your planned
...charge date.

...ou think you are being discharged too soon:

...ou can talk to the hospital staff, your doctor and your managed care plan (if you belong to one) about
...our concerns.

...ou also have the right to an appeal, that is, a review of your case by a Quality Improvement
...rganization (QIO). The QIO is an outside reviewer hired by Medicare to look at your case to decide
...hether you are ready to leave the hospital.

- If you want to appeal, you must contact the QIO no later than your planned discharge
  date and before you leave the hospital.

- If you do this, you will not have to pay for the services you receive during the appeal (except
  for charges like copays and deductibles).

...you do not appeal, but decide to stay in the hospital past your planned discharge date, you may have
...o pay for any services you receive after that date.

...tep by step instructions for calling the QIO and filing an appeal are on page 2.

...speak with someone at the hospital about this notice, call (773) 947-7942

...ase sign and date here to show you received this notice and understand your rights.

...ture of Patient or Representative                    Date  12/8/09

CMS-R-193 (approved 05/07)

*Patient unable to sign
legally blind.*

(Sr) a

**ER**

Jackson Park Hospital
WILLIAMS, JAMAL
SX: M DOB: 06/01/1971 AGE: 38Y
V#: 779274 DT: 11/16/2009 07:46
M#: 208653 Plan# 8540
WILLIAMS, DAVID

**INP**

Jackson Park Hospital
WILLIAMS, JAMAL
SX: M DOB: 06/01/1971 AGE: 38Y
V#: 781451 DT: 12/08/2009 15:14
M#: 208653 Plan# 8580
KANDALA, RAJIV

March 3, 2011

EEOC # 440-2010-05271

Fax # 312 869 8220

Dear Anna Bojda:

Jamal Williams v. The Chicago Lighthouse

I am writing to you with updated information regarding my case with The Chicago Lighthouse. I have the name as well as the number of the driver who was with me when I had the seizure on 11/18/09 on the Pace/SCR bus. The accident happened on 8400 South Michigan Avenue as I was coming home from work at the General Services Administration building at 536 South Clark Street in Chicago, Illinois.

The driver's name is Charles Miller # 31365. If you have any questions regarding the incident, please feel free to contact the PACE/SCR Manager at 773-768-7000. I also have included the names of my doctors at Jackson Park Hospital. The doctors can be reached at 773-947-7500 if you have any questions. The names are Dr. Gilati, Dr. Shah and Dr. Kandala.

When I returned from my illness, I was harassed by the staff of Chicago Lighthouse. Jeanette Bonzani, the Director of Human Resources stated that Dr. Shah told her that I could not lift fifty pounds, which was a requirement at Rush University Hospital gift shop where I was to begin employment in January of 2010. I know that the doctor did not give Ms. Bonzani this information, because I was never told of any restriction. I'm also aware that it would've violated Doctor/Patient confidentiality. Ms. Bonzani as well as Sheila Perkins did not want me with the company because of the seizure.

If you have any further questions, please feel free to contact me at 708-849-8740. I look forward to speaking with you soon.


Regards,

Jamal Williams

Messica

Pepperoni

Sausage
Spinach

page