**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMAL WILLIAMS,<br><br>  Plaintiff,<br><br>  v.<br><br>CHICAGO LIGHTHOUSE FOR PEOPLE WHO ARE BLIND OR VISUALLY IMPAIRED, an Illinois Not-for-Profit Corporation,<br><br>  Defendant. | No. 11 C 8993<br>Judge James B. Zagel |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jamal Williams has brought this action against Defendant Chicago Lighthouse for People Who Are Blind or Visually Impaired for employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  Currently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  For the following reasons, Defendant's motion is granted.

## BACKGROUND

Plaintiff suffers from epilepsy, enduring 2-3 epileptic seizures per month.  Plaintiff is also visually impaired.  In mid-October 2009, Plaintiff began working as a part-time intern in the Communication Center of the Chicago Lighthouse for People Who Are Blind or Visually Impaired ("the Lighthouse").  The principal responsibility of those holding this position is to answer telephone calls regarding the Lighthouse's Low Vision Clinic.

On November 18, 2009 Plaintiff had a seizure on a bus while on his way home from work.  He was hospitalized as a result.  The next day, he called Jeanette Bonzani, who was then

the Director of Human Resources at the Lighthouse. He explained what had happened to him and hold her he would not be able to work for a while. Ms. Bonzani told Plaintiff to take all the time he needed to recover.

Plaintiff returned to work on December 15, 2009. He asserts that, upon returning, he detected a difference in "mood" at the Communication Center. When a radio was playing loud music by his work station, Plaintiff wished to turn the volume down, fearing that the noise might prompt another seizure. According to the complaint, his supervisor, Miguel Zapata, refused the request. Plaintiff also sought to play his own radio at his work station; Mr. Zapata apparently refused that request as well. Next, after observing Plaintiff speaking with Edwvina Manzano, a KRIS Radio employee that had a desk in the Communication Center, Mr. Zapata pulled Plaintiff aside and admonished him that he was not paid to speak about KRIS Radio.

The following day, Plaintiff approached Mr. Zapata to express his displeasure with the way Mr. Zapata had spoken to him the previous day. Mr. Zapata does not appear to have engaged substantively with Plaintiff, electing instead to bring Plaintiff and the matter to Sheila Perkins, Mr. Zapata's supervisor and then the Director of Employment Services at the Lighthouse. In the discussion that ensued between the three individuals, Ms. Perkins appears to have taken Mr. Zapata's side. The discussion apparently grew somewhat heated, with Ms. Perkins raising her voice.

It is undisputed that Plaintiff became upset over how Mr. Zapata and Ms. Perkins were speaking to him. It is also undisputed that, at some point in the meeting, Plaintiff placed his badge on Ms. Perkins' desk and walked out, never to return to the Lighthouse. Plaintiff contends that, prior to placing his badge on the desk, Ms. Perkins told him to "get off the premises." Plaintiff's deposition testimony appears to indicate that he was told to leave the premises *after*

putting his badge on the desk.  *See Plaintiff's Statement of Additional Facts*, Ex. 2 pp. 144:12-145:1.

Defendant does not affirmatively acknowledge that Ms. Perkins ever told Plaintiff to get of the premises.  In any event, it is undisputed that, prior to Plaintiff leaving, Ms. Perkins began speaking on the phone and told Plaintiff to "wait."  He did not wait, electing instead to walk out of the Lighthouse.  Seeing Plaintiff on his way out, Ms. Bonzani walked after him to the entrance to try to persuade him to come back.  Plaintiff did not respond and continued to walk away.

At some point in the subsequent 14 days, Plaintiff spoke on the phone with Zenobia Shelby, a Lighthouse employee, and mentioned the prospect of bringing an employment discrimination suit against the Lighthouse.  On December 30, 2009 Ms. Bonzani sent Plaintiff a letter acknowledging the termination of his employment for "job abandonment."

Approximately seven months later, Plaintiff filed a Charge of Discrimination with the EEOC alleging disability discrimination.  This action followed.

## DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts

showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

Unlike employment discrimination claims on the basis of sex or race, claims of discrimination on the basis of a disability must account for the possibility that the employer may not have knowledge of the trait against which he or she is alleged to have discriminated. If the employer does not know the employee has a disability, any adverse action taken against the employee cannot have been taken "because" of the employee's disability. *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995); *see* 42 U.S.C. § 12112(b)(1).

The adverse treatment of which Plaintiff complains came at the hands of Mr. Zapata and Ms. Perkins. There appears to be no genuine dispute, however, that neither Mr. Zapata nor Ms. Perkins knew of Plaintiff's disability when the adverse treatment occurred. Plaintiff does not claim to have informed either of them about his disability at any time. No one else at the

Lighthouse claims to have informed them of his disability. Plaintiff does not claim to have any knowledge that anyone else informed them of his disability. And Mr. Zapata and Ms. Perkins themselves have both sworn that they had no knowledge of his disability.

In response to this basis for summary judgment, Plaintiff points to the fact that three other Lighthouse employees have acknowledged that they themselves knew of Plaintiff's disability. Plaintiff asserts only that there must then be a genuine issue of fact as to whether any of these employees informed Mr. Zapata or Ms. Perkins of his disability. This is an effort to dispute evidence with speculation, and it is precisely the sort of argument that summary judgment is meant to defeat. *See Hedberg*, 47 F.3d at 931-32; *see also* Fed. R. Civ. P. 56(c)(1). It is undisputed that no one claims or admits to having told Mr. Zapata and Ms. Perkins of Plaintiff's disability. Plaintiff offers no definite evidence to the contrary, and mere conjecture will not suffice.

There is some anecdotal evidence in the record suggesting that Ms. Perkins may well speak harshly to her employees at times, and may even be an unpleasant person for whom to work. But to find definite evidence of disability discrimination in the record sufficient to rebut Defendant's motion for summary judgment would be an invention of the Court.

In his response brief, Plaintiff also suggests that the letter he received formally acknowledging the termination of his employment was sent "only" after certain employees at the Lighthouse learned that he was contemplating an employment discrimination lawsuit. As a threshold matter, this is not factually accurate. The letter was also sent after Plaintiff turned in his badge, left the premises, and after two weeks had passed without contact between Plaintiff and his employer.[1] Further, there is no definite evidence that Ms. Bonzami, who wrote the letter,

---

[1] Defendant asserts that the Lighthouse afforded Plaintiff two weeks in an effort to give him time to "cool down" and reconsider his decision not to "wait" and continue his meeting with Mr. Zapata and Ms. Perkins.

knew that Plaintiff was contemplating a lawsuit when she sent the letter.

But these points aside, this assertion amounts to a retaliation claim, and retaliation was not claimed in Plaintiff's EEOC charge, nor even in his complaint.  It is therefore not properly before the Court.  *See Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.


ENTER:

James B. Zagel
United States District Judge

DATE: January 10, 2014